**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**MIAMI-DADE DIVISION**

**CASE NO.:**

JACOB MURPHY,

    Plaintiff,

vs.

AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA,

    Defendant.
_____/

**COMPLAINT**

The Plaintiff, JACOB MURPHY, by and through the undersigned counsel, hereby sues the Defendant, AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, and as grounds therefore, states as follows:

**INTRODUCTION**

1. This is an action for breach of contract brought by the Plaintiff, JACOB MURPHY (the "Plaintiff") against the Defendant, AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA (the "Defendant"), arising out of damages sustained to the Plaintiff's property as the result of a flood that occurred on or about June 4, 2022.

2. Despite the Plaintiff's timely payment of all premiums due and owing, the Defendant failed to fully indemnify the Plaintiff for his covered losses.

3. As a result, the Plaintiff now seeks damages against the Defendant for to unreasonable and unsubstantiated denial of Plaintiff's claim and for failing to pay for all of the losses covered under the terms of the insurance policy issued to the Plaintiff.

## PARTIES

4. At all times material hereto, the Plaintiff, JACOB MURPHY, was a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

5. At all times material hereto, the Defendant, AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, was a Florida Corporation authorized and existing under the laws of the State of Florida with its principal place of business located at 11222 Quail Roost Drive, in Miami, Miami-Dade County, Florida. At all times material hereto, the Defendant, was authorized to conduct business in the State of Florida and was engaged in the business of insurance.

6. At all times material hereto, the Defendant was a private insurance company qualified to do business in the state of Florida and participates in FEMA's "Write Your Own" (WYO) program. The Defendant issued a Standard Flood Insurance Policy (hereinafter referred to as "SFIP") in its own name, as a fiscal agent of the United States, to the Plaintiff. Pursuant to 44 C.F.R. §62.23(d) and (i)(6), the Defendant is responsible for arranging the adjustment, settlement, payment and defense of all claims arising under the policy.

## JURISDICTION

7. This action arises under the *National Flood Insurance Act*, as amended, 82 Stat. 583, 42 U.S.C. §4001, et seq., pursuant to the insurance contract issued to the Plaintiff, as hereinafter more fully appears. This action, having arisen under an applicable federal statute, namely, 42 U.S.C. §4072, requires the application of federal law pursuant to the general federal jurisdiction provisions of 28 U.S.C. §1331.

**VENUE**

8. Under 28 U.S.C. §1391(b), venue is proper in the United States District Court for the Southern District of Florida, as this is the district where the Defendant resides, where the subject property for which the insurance policy was issued is located, and where a substantial part of the acts or omissions giving rise to the claim occurred.

9. All conditions precedent to the filing of this action have occurred, have been performed, or have otherwise been satisfied or waived.

**GENERAL ALLEGATIONS**

10. On or about January 26, 2022, the Plaintiff purchased the residential property located at 11153 Griffing Boulevard, in Biscayne Park, Miami-Dade County, Florida (the "Insured Property").

11. In consideration of premiums paid by the Plaintiff, the Defendant issued the Plaintiff a *National Flood Insurance Program* ("NFIP") *Standard Flood Insurance Policy* ("SFIP"), *Dwelling Form*, bearing Policy No.: 7407377125 (the "Policy"). which was in full force and effect from February 24, 2022, through February 24, 2023. *See* the Flood Policy Declarations is attached hereto as *Exhibit "A"*.

12. At all times material hereto, the Plaintiff had paid all premiums on the Policy and the Policy was in full force and effect on the date of the subject loss.

13. At all times material hereto, and pursuant to the terms of the Policy, the Defendant agreed to pay the Plaintiff for a direct physical loss to the property caused by a flood. *See* the Standard Flood Insurance Policy dated October 2021 attached hereto as *Exhibit "B"*.

14. Specifically, the Policy issued by the Defendant provided flood damage coverage to the Plaintiff's dwelling and other structures, more fully described in Coverage A of the Policy,

up to a limit of $250,000. The Policy also provides payment for costs incurred for debris removal and loss avoidance measures, as more fully described in Coverage C of the Policy, as well as for the costs incurred in order to comply with state or local flood plain management laws or ordinances, as more fully described in Coverage D, up to a limit of $30,000. *See Ex. B*.

15. On or about June 4, 2022, Tropical Storm Alex impacted South Florida, causing widespread and devastating flooding to the area.

16. The storm surge, tidal water and rain associated with the Tropical Storm inundated the Plaintiff's land and surrounding area, resulting in significant physical damage to Plaintiff's property.

17. After the flood, the Plaintiff took all reasonable measures within his control to inspect and maintain the subject premises.

18. The Plaintiff timely provided the Defendant with notice of the loss.

19. Thereafter, the Defendant sent an adjuster to the Insured Property to conduct an inspection, to create an estimate and a proof of loss, and to make adjustment recommendations, subject to the approval by the Defendant.

20. On or about November 11, 2022, the Adjuster inspected the Insured Property.

21. Despite the Plaintiff repeatedly telling the Adjuster that there was clear evidence of flood damage underneath the home, he made no attempt to ever go into the crawlspace to assess the damage.

22. Following the inspection, the Adjuster created an estimate of damages and provided the Plaintiff with a Proof of Loss totaling $5,427.07. *See* Proof of Loss attached hereto as *Exhibit "C"*.

23. The Plaintiff notified the Adjuster and the Defendant that he would not be accepting $5,427.07 for resolution of this claim, as that amount is wholly insufficient and fails to adequately compensate the Plaintiff for all of his covered losses.

24. The Adjuster informed the Plaintiff that he had put in a request with the Defendant to hire an independent engineer to reinspect the premises to further investigate and assess the extent of the damage.

25. Thereafter, the Plaintiff was informed by the Adjuster that his request for an engineer was denied by the Defendant, and he directed the Plaintiff to hire his own experts to determine the cause of the loss, the extent of the damage and the estimated cost of repairs. The Adjuster advised the Plaintiff that this would help the Defendant in the adjustment of the claim.

26. At the sole direction of the Adjuster, the Plaintiff retained the services of two experts: (1) an engineer to make a determination as to the cause of the damage to the property; and (2) a general contractor to assess the damage and create an estimate of the cost for repairs.

27. As a result, the Plaintiff incurred thousands of dollars in fees that the Plaintiff has had to pay for out-of-pocket.

28. Based on the information the Plaintiff received from his experts' following their investigation of the claim, the Plaintiff submitted a Proof of Loss totaling $295,085.45.

29. On January 11, 2023, the Plaintiff received a Partial Denial Letter with an enclosed check in the amount of $3,427.07, which is the amount set forth in the Adjuster's estimate, less the $2,000 deductible owed by Plaintiff under the terms of the policy. *See* Partial Denial Letter dated January 11, 2023, attached hereto as *Exhibit "D"*.

30. This Denial Letter stated that the Defendant needed additional time to investigate the claim and further stated that they were *now* going to hire an engineer despite numerous prior requests by the Plaintiff. *See Ex. D*.

31. Plaintiff refused to accept the $3,427.07 offered by the Defendant to resolve this claim, as Plaintiff's experts have found conclusive evidence that the Flood on June 4, 2022, caused direct physical damage to the Insured Property, in an amount that far exceeds the amount offered by the Defendant.

32. Plaintiff did not cash this check.

33. Ultimately, the Defendant hired an engineer and a third inspection of the property took place on or about February 13, 2023.

34. Similar to the first inspection conducted by the Defendant's Adjuster, the Defendant's Expert made no attempt to access the crawlspace to assess the damage alleged.

35. Despite being physically able to do so, no employee, agent or representative of the Defendant has ever even attempted to enter the crawlspace to visually observe the damages alleged by the Plaintiff.

36. Despite admitting coverage for the loss by the issuance of the $3,427.07 check, the Defendant subsequently denied this claim in a Denial Letter dated August 31, 2022, two months before the Defendant was even notified of the loss. *See* Denial Letter dated August 31, 2022, attached hereto as *Exhibit "E"*.

37. As a result of the Defendant's denial, Plaintiff' brings this lawsuit.

## COUNT I – BREACH OF CONTRACT

The Plaintiff, JACOB MURPHY, adopts and realleges paragraphs ten (10) through thirty-seven (37), as fully set forth herein, and further states as follows:

6

38. On or about June 4, 2022, Tropical Storm Alex struck South Florida, producing excessive amounts of rain, and causing the Subject Property and the surrounding area to flood, resulting in a significant direct physical loss to the property.

39. At all times material hereto, the Plaintiff's flood insurance policy issued by the Defendant was in full force and effect.

40. On or about June 4, 2023, the Policy issued by Defendant provided coverage for direct physical loss to property caused by flooding.

41. At all times material hereto and under the terms of the policy, the Defendant had a duty to indemnity the Plaintiff in the event of a covered loss during the policy period.

42. The Defendant breached this duty by failing to adequately investigate the claim and pay the full amount of the benefits due and owing under the Policy.

43. As a direct and proximate result of Defendant's refusal to remit payment for losses covered in the policy, the Plaintiff has sustained and will continues to sustain significant damages to his home.

44. Further, as a result of Defendant's breach, the Plaintiff was required to retain the undersigned attorney to protect his interest.

WHEREFORE, the Plaintiff, JACOB MURPHY, demand judgment against the Defendant, AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, for damages, prejudgment and post judgment interest, and for such other and further relief the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby request a jury trial for all matters triable by jury.

Dated: December 11, 2023

Respectfully submitted,

/s/ *Kaitlin R. Stapleton, Esq.*

**KAITLIN R. STAPLETON**
*Attorney for the Plaintiff*
11153 Griffing Blvd.
Biscayne Park, FL 33161
P: (631)553-7655
E: kstapleton@ausprojectgroup.com
Florida Bar No.: 125130

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically via the CM/ECF on this 11TH day of December, 2023.

/s/ *Kaitlin R. Stapleton, Esq.*

**KAITLIN R. STAPLETON**
*Attorney for the Plaintiff*
11153 Griffing Blvd.
Biscayne Park, FL 33161
P: (631)553-7655
E: kstapleton@ausprojectgroup.com
Florida Bar No.: 125130